UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **LINDSEY OAKS**, Individually & | : | CASE NO.: |
| on behalf of all others similarly situated | | |
| 5534 Lawrence Road | : | JUDGE: |
| Cincinnati, Ohio 45248 | | |
| | : | |
| and | | |
| | : | |
| **GERALD JEFFERIES**, Individually & | | |
| on behalf of all others similarly situated | : | |
| 1825 Big Run Road | | **COMPLAINT WITH CLASS** |
| Seaman, Ohio 45679 | : | **ACTION ALLEGATIONS &** |
| | | **JURY DEMAND** |
| and | : | |
| | | |
| **CONSTANCE QUIGLEY**, Individually & | : | |
| on behalf of all others similarly situated | | |
| 229 Washington Avenue | : | |
| Cincinnati, Ohio 45215 | | |
| | : | |
| and | | |
| | : | |
| **EMIL MEROLLA**, Individually & on | | |
| behalf of all others similarly situated | : | |
| 4821 Landchester Road | | |
| Cleveland, Ohio 44109 | : | |
| | | |
| and | : | |
| | | |
| **CYNTHIA MEROLLA**, Individually & | : | |
| on behalf of all others similarly situated | | |
| 4821 Landchester Road | : | |
| Cleveland, Ohio 44109 | | |
| | : | |
| Plaintiffs, | | |
| | : | |
| vs. | | |
| | : | |
| **COLUMBUS RADIOLOGY CORP.** | | |
| 471 E. Broad Street, Ste. 1400 | : | |
| Columbus, Ohio 43215 | | |
| | : | |

Registered Agent:                                    :
    Corporation Service Company
    1160 Dublin Road                          :
    Columbus, Ohio 43215

                                                :

and
                                                :

**FROST-ARNETT COMPANY**
2105 Elm Hill Pike, Ste. 200                         :
Nashville, TN 37210

                                                :

Registered Agent:
    CT Corporation System                     :
    2908 Poston Avenue
    Nashville, TN 37203-1312                  :

        Defendants.                            :

Now come plaintiffs, Lindsey Oaks, Gerald Jefferies, Constance Quigley, Emil Merolla and Cynthia Merolla, on behalf of themselves and all others similarly situated, by and through counsel, and for their cause of action, state as follows:

## INTRODUCTION

This case seeks redress for unlawful medical billing. Defendants unlawfully sought and received payments from health insured patients rather than from their health insurers. They did so in clear violation of Ohio and Federal law. Ohio R.C. §1751.60 prohibits such conduct:

> "Except as provided for in divisions (E) and (F) of this section, every provider or health care facility that contracts with a health insuring corporation to provide health care services to the health insuring corporation's enrollees or subscribers shall seek compensation for covered services solely from the health insuring corporation and not, under any circumstances, from the enrollees or subscribers, except for approved copayments and deductibles." Ohio R.C. §1751.60(A).

2

Likewise, Ohio R.C. §3902.51, "Reimbursement for unanticipated out-of-network care" prohibits such conduct regardless whether or not defendant, Columbus Radiology Corp. ("Columbus Radiology") was operating as a network or out of network provider. Additionally, the conduct is also violative of 26 U.S.C. Code §9816. "Preventing surprise medical bills."

Patients, including plaintiffs, Lindsey Oaks, Gerald Jefferies, Constance Quigley, Emil Merolla and Cynthia Merolla, who were insured with health insuring corporations ("HICs"), could not be subjected to attempts to collect medical debt, nor collection thereof, pursuant to both Ohio and Federal law, other than for applicable co-payments or deductibles. This statutory prohibition applies no matter whether the health insurer pays or not, and does so even if the health insurer ceases business. There are no exceptions; such is stated explicitly in the statutes. Likewise, the statutes prohibit such efforts not only regarding health insured patients but also to anyone acting in a representative capacity on the patient's behalf. Any attempt to collect or actual collection is prohibited.

In addition to the aforementioned statutory violations, defendant Frost-Arnett Company ("Frost-Arnett") violated the federal right of patients to be free of unlawful debt collection practices, as prohibited by the Federal Debt Collection Practices Act, 15 U.S.C. § 1692 (hereinafter "FDCPA"). Defendant, Frost-Arnett, in communications to plaintiffs and other putative class members, represented that Frost-Arnett was a debt collector, seeking to collect debts, allegedly owed for treatment rendered by defendant Columbus Radiology. These alleged debts were never owed because they were non-existent pursuant to Ohio and Federal law.

Frost-Arnett clearly violated the FDCPA by making false representations regarding the amount and legal status of patient debts.  Likewise, Frost-Arnett engaged in prohibited conduct by collecting or attempting to collect debts that were not owed.

Plaintiffs, Lindsey Oaks, Gerald Jefferies, Constance Quigley, Emil Merolla and Cynthia Merolla, make the within allegations based upon personal knowledge and upon information and belief.  Plaintiffs bring this action on behalf of themselves and all other individuals similarly situated seeking redress for damages resulting from the conduct of defendants, Columbus Radiology and Frost-Arnett.

## JURISDICTION AND VENUE

1. Plaintiffs refer to and incorporate the preceding allegations as if fully rewritten herein.

2. This action is brought pursuant to 15 U.S.C. § 1692 and all other U.S.C. code sections cited, *supra*.  The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction of State law claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this district pursuant to 28 U.S.C. 1391(a)(2) because a substantial part of the events giving rise to the claims occurred within this judicial district.

## PARTIES

4. Plaintiff, Lindsey Oaks, is a resident of Cincinnati, Ohio and at all times relevant herein is the named insured in a health insurance policy issued by Anthem BCBS.  She is thereby entitled to benefits and payment of health care services by Anthem BCBS.

4

5.      Plaintiff, Gerald Jefferies, is a resident of Seaman, Ohio and at all times relevant herein is the named insured in a health insurance policy issued by Medical Mutual.  He is thereby entitled to benefits and payment of health care services by Medical Mutual.

6.      Plaintiff, Constance Quigley, is a resident of Lockland, Ohio and at all times relevant herein is the named insured in a health insurance policy issued by Anthem BCBS.  She is thereby entitled to benefits and payment of health care services by Anthem BCBS.

7.      Plaintiff, Emil Merolla, is a resident of Cleveland, Ohio and is the named insured in a health insurance policy issued by Medicare.  He is thereby entitled to benefits and payment of health care services by Medicare.

8.      Plaintiff, Cynthia Merolla, is a resident of Cleveland, Ohio and is the named insured in a health insurance policy issued by Medicare.  She is thereby entitled to benefits and payment of health care services by Medicare.

9.      Defendant, Columbus Radiology, is a company, corporation and/or other business entity licensed to do business in the State of Ohio with its principal place of business located in Columbus, Ohio.  Columbus Radiology employs more than one hundred and thirty (130) radiologists, provides radiology services in seventy (70) Ohio ambulatory care centers and twenty-four (24) Ohio hospitals, including hospitals which have provided medical care to the named plaintiffs. (See Exhibit 1).

10.     Defendant, Frost-Arnett, is a company, corporation and/or other business entity licensed to do business in the State of Ohio with its principal place

5

of business located in Nashville, Tennessee. Among other things, Frost-Arnett provides debt collection and medical billing services to medical providers in the State of Ohio, including, but not limited to, defendant, Columbus Radiology.

## GENERAL ALLEGATIONS

11. Plaintiffs refer to and incorporate the preceding allegations as if fully rewritten herein.

12. At all times relevant herein, Columbus Radiology provided radiology services at Hospitals and ambulatory care centers throughout Ohio by and through its agents, servants and/or employees.

13. At all times relevant herein, defendant, Frost-Arnett, provided revenue cycle services and debt collection services to defendant, Columbus Radiology by and through its agents, servants and/or employees.

14. Frost-Arnett represents that it has been involved in medical billing since 1972. Frost-Arnett asserts that its "highly-skilled staff has been working in innovative ways to provide ROI-enhancing services including insurance follow-up, pre-registration services," including the "industry's best technology to facilitate the highest productivity, transparency, security, and regulatory compliance available." Further, Frost-Arnett also claims to be "experts in the ever-changing compliance world, and our 90-day initial training program incorporates the latest HIPAA, TCPA, FDCPA, UDAAP, and other regulatory principles." (See Exhibit 2).

15. Upon information and belief, when a patient presents for treatment at a hospital/medical provider, a registration clerk takes the patient's demographic information, reason for treatment and health insurance information.

6

16.    Upon information and belief, Columbus Radiology, then receives a patient's demographic information, reason for treatment and health insurance information, obtained by the registration clerk via an automated standard process.

17.    Upon information and belief, Columbus Radiology has entered into Provider Agreements with most major Health Insuring Corporations ("HICs") operating in the State of Ohio.

18.    Pursuant to Ohio R.C. §1751.13(C)(2)'s mandatory "hold harmless" provision, the Provider Agreement entered into by and between Columbus Radiology and all Ohio HIC's, contains the following provision:

"[Provider/Health Care Facility] agrees that in no event, including but not limited to nonpayment by the health insuring corporation, insolvency of the health insuring corporation, or breach of this agreement, shall [Provider/Health Care Facility] bill, charge, collect a deposit from, seek remuneration or reimbursement from, or have any recourse against, a subscriber, enrollee, person to whom health care services have been provided, or person acting on behalf of the covered enrollee, for health care services provided pursuant to this agreement. This does not prohibit [Provider/Health Care Facility] from collecting co-insurance, deductibles, or copayments as specifically provided in the evidence of coverage, or fees for uncovered health care services delivered on a fee-for-service basis to persons referenced above, nor from any recourse against the health insuring corporation or its successor."

19. Upon information and belief, Defendants, Columbus Radiology and Frost-Arnett, systematically failed and/or refused to submit claims for medical treatment to Ohio patients' HICs and instead billed the Ohio patient in direct violation of applicable provider agreements, and Ohio R.C. §1751.60, Ohio R.C. §3902.51 and 26 U.S.C. Code §9816.

### Lindsey Oaks Allegations

20. On January 16, 2023, plaintiff, Lindsey Oaks, sustained injuries in a motor vehicle accident.

21. As a result of this accident, on October 9, 2023, plaintiff, Lindsey Oaks, received medical treatment and underwent an MRI of her lumbar spine at Mercy Health – West Hospital in Cincinnati, Ohio.

22. On October 9, 2023, plaintiff, Lindsey Oaks encountered a registration clerk upon her arrival at Mercy Health – West Hospital. Upon information and belief, the registration clerk was specifically trained to obtain health insurance information, demographic information (including address, phone number and email) and the reason for treatment regarding every new patient, including plaintiff, Lindsey Oaks.

23. On or about October 9, 2023, Plaintiff, Oaks, informed the registration clerk at Mercy Health – West Hospital that she had health insurance coverage with Anthem BCBS, a health insurance corporation ("HIC"), and provided all relevant information necessary to submit claims for coverage to said HIC, including plan name, claim address, group number and policy number. (See Exhibit 3).

24. Upon information and belief, Mercy Health – West Hospital forwarded plaintiff, Lindsey Oaks', lumbar spine imaging, registration and demographic information, including applicable HIC information, to Columbus Radiology.

25. On or about October 9, 2023, Plaintiff, Lindsey Oaks, received radiological services from Columbus Radiology, its agents, servants and/or employees, including the reading of an MRI of her lumbar spine.

26. In the months following the October 9, 2023 treatment, defendant, Columbus Radiology, utilized the demographic information provided by plaintiff, Lindsey Oaks to send numerous medical bills seeking payment directly from plaintiff, Lindsey Oaks, other than for co-payments or deductibles.

27. Defendant, Columbus Radiology, sought payment directly from plaintiff, Lindsey Oaks, via regular U.S. Mail on or about: October 18, 2023, November 27, 2023, January 6, 2024 and February 16, 2024. (See Exhibit 4).

28. Defendant, Columbus Radiology, sought payment directly from plaintiff, Lindsey Oaks, via regular E-Mail on or about: November 10, 2023, November 29, 2023 and December 6, 2023. (See Exhibit 5).

29. Defendant, Columbus Radiology, sought payment directly from plaintiff, Lindsey Oaks, via text message on or about: December 6, 2023. (See Exhibit 6).

30. Defendant, Columbus Radiology then turned the matter over to defendant, Frost-Arnett.

31.     Defendant, Frost-Arnett Defendant, sought payment directly from plaintiff, Lindsey Oaks, via text message on or about: January 3, 2024, April 4, 2024, April 5, 2024, April 8, 2024, April 9, 2024, April 30, 2024, May 1, 2024, May 2, 2024, May 6, 2024, May 7, 2024, May 8, 2024, June 3, 2024, June 4, 2024, June 5, 2024, June 6, 2024, June 7, 2024, July 2, 2024, July 11, 2024, July 12, 2024, July 15, 2024, August 9, 2024, September 4, 2024, September 5, 2024, September 6, 2024, October 14, 2024, November 21, 2024, November 29, 2024, December 17, 2024, December 24, 2024 and January 3, 2025.  (See Exhibit 7).

32.     Defendant, Frost-Arnett, sought payment directly from plaintiff, Lindsey Oaks, via telephonic communications from June 5, 2024 through the filing of this Complaint.  Upon information and belief, there have been in excess of Thirty-Nine (39) telephonic communications seeking payment. (See Exhibit 8).

33.     Defendants have also failed and refused to submit claims/medical expenses to Anthem BCBS, plaintiff Lindsey Oaks', HIC.

**Gerald Jefferies Allegations**

34.     On June 28, 2022, plaintiff, Gerald Jefferies, sustained injuries in a motor vehicle accident.

35.     As a result of the incident, plaintiff, Gerald Jefferies, received medical treatment for his injuries at Mercy Health – Clermont Hospital in Clermont County, Ohio.

36.     On or about June 28, 2022, Jefferies encountered a registration clerk upon his arrival at Mercy Health – Clermont Hospital.  Upon information and belief, the registration clerk was specifically trained to obtain health insurance

information, demographic information and the reason for treatment regarding every new patient, including plaintiff, Gerald Jefferies.

37. On or about June 28, 2022, Plaintiff, Jefferies, informed the registration clerk at Mercy Health – Clermont Hospital that he had health insurance coverage with Medical Mutual, a health insurance corporation ("HIC"), and he provided all relevant information necessary to submit claims for coverage to said HIC.

38. On or about June 28, 2022, Plaintiff, Gerald Jefferies, received radiology services from Columbus Radiology, its agents, servants and/or employees, including the reading of a CT scan of his abdomen/pelvis, CT scan of his chest, CT scan of his neck, CT scan of his head, X-Ray of his hand and X-ray of his fingers.

39. Itemized medical bills for Gerald Jefferies treatment at Mercy Health– Clermont Hospital, including, but not limited to, a CT scan of his abdomen/pelvis, CT scan of his chest, CT scan of his neck, CT scan of his head, X-Ray of his hand and X-ray of his fingers, acknowledge and evidence that plaintiff, Gerald Jefferies, had insurance coverage with Medical Mutual. (See Exhibit 9).

40. In the months following the June 28, 2022 services, defendant, Columbus Radiology, utilized the demographic information provided by plaintiff, Gerald Jefferies, to send medical bills seeking payment directly from plaintiff, Gerald Jefferies.

41. On or about December 4, 2022, defendant Columbus Radiology sent written correspondence to plaintiff, Gerald Jefferies, via U.S. Mail seeking payment for health care expenses, other than a co-payment or deductible. (See Exhibit 10).

42. On or about May 15, 2023, defendant, Columbus Radiology, directed and/or authorized defendant, Frost-Arnett, to initiate debt collection against plaintiff, Gerald Jefferies, for payment for health care expenses, other than a co-payment or deductible. (See Exhibit 11).

43. On or about May 20, 2023, defendant, Frost-Arnett, sent written correspondence to plaintiff, Gerald Jefferies, stating that Frost-Arnett is a debt collector, attempting to collect a debt owed to defendant, Columbus Radiology, seeking payment for health care expenses, other than a co-payment or deductible. (See Exhibit 12).

44. Defendants, Columbus Radiology and Frost-Arnett, have failed and/or refused to submit claims/medical expenses to Medical Mutual, plaintiff, Gerald Jefferies', HIC.

## Constance Quigley Allegations

45. On October 28, 2024, plaintiff, Constance Quigley, sustained injuries in a motor vehicle accident.

46. As a result of the incident, plaintiff, Constance Quigley, received medical treatment for her injuries at Mercy Health – Fairfield Hospital in Butler County, Ohio.

47. On or about October 28, 2024, plaintiff, Constance Quigley, encountered a registration clerk upon her arrival at Mercy Health – Fairfield

Hospital. Upon information and belief, the registration clerk was specifically trained to obtain health insurance information, demographic information and the reason for treatment regarding every new patient, including plaintiff, Constance Quigley.

48. On or about October 28, 2024, Plaintiff, Constance Quigley, informed the registration clerk at Mercy Health – Fairfield Hospital that she had health insurance coverage with Anthem BCBS, a health insurance corporation ("HIC"), and provided all relevant information necessary to submit claims for coverage to said HIC.

49. On or about October 28, 2024, Plaintiff, Constance Quigley, received radiology services from Columbus Radiology, its agents, servants and/or employees, including the reading of a CT scan of her cervical spine and head.

50. Itemized medical bills for plaintiff, Constance Quigley's treatment at Mercy Health– Fairfield Hospital, including, but not limited to, a CT scan of her cervical spine and head evidence that plaintiff, Constance Quigley, had insurance coverage with Anthem BCBS. (See Exhibit 13).

51. In the months following the October 28, 2024 treatment, defendant, Columbus Radiology, utilized the demographic information provided by plaintiff, Constance Quigley, to send medical bills seeking payment directly from plaintiff, Constance Quigley, other than for co-payments or deductibles.

52. On or about November 2, 2024, defendant Columbus Radiology sent written correspondence to plaintiff, Constance Quigley, via U.S. Mail seeking payment for health care expenses, other than a co-payment or deductible. (See Exhibit 14).

53. In response, plaintiff, Constance Quigley, directed legal counsel to contact defendant, Columbus Radiology. Counsel sent written correspondence via U.S. mail on November 26, 2024 advising that Ms. Quigley had health insurance and providing a courtesy copy of Ms. Quigley's health insurance card. (See Exhibit 15).

54. Despite having been again provided Ms. Quigley's insurance information, on or about January 21, 2025, defendant Columbus Radiology sent another written correspondence to plaintiff, Constance Quigley, via U.S. Mail seeking payment for health care expenses, other than a co-payment or deductible. (See Exhibit 16).

## Emil Merolla Allegations

55. On May 4, 2023, plaintiff, Emil Merolla, received medical treatment at Southwest General Hospital in Cuyahoga County, Ohio.

56. On May 4, 2023, plaintiff, Emil Merolla, encountered a registration clerk upon his arrival at Southwest General Hospital. Upon information and belief, the registration clerk was specifically trained to obtain health insurance information, demographic information and the reason for treatment regarding every new patient, including plaintiff, Emil Merolla.

57. On May 4, 2023, Plaintiff, Emil Merolla, informed the registration clerk at Southwest General Hospital that he had health insurance coverage with Medicare and a Mutual of Omaha Medicare Supplement, an HIC. He provided all relevant information necessary to submit claims for coverage to said HIC.

58.     On or about May 4, 2023, Plaintiff, Emil Merolla, received radiology services from Columbus Radiology, its agents, servants and/or employees, including the reading of a radiological examination of his cervical spine.

59.     An itemized Explanation of Benefits (EOB) for plaintiff, Emil Merolla's treatment at Southwest General Hospital, including, but not limited to, a radiological exam of his cervical spine, evidence that plaintiff, Emil Merolla, had insurance coverage with Medicare and a Mutual of Omaha Medicare Supplement. (See Exhibit 17).

60.     Following treatment, defendant, Columbus Radiology, utilized the demographic information provided by plaintiff, Emil Merolla, to send medical billing seeking payment directly from plaintiff, Emil Merolla, other than for co-payments or deductibles.

61.     On or about May 12, 2023, defendant Columbus Radiology sent written correspondence to plaintiff, Emil Merolla, via U.S. Mail seeking payment for health care expenses, other than a co-payment or deductible.  (See Exhibit 18).

62.     In response, plaintiff, Emil Merolla, paid the medical bill in full on or about July 1, 2023 via a Western Union money order.  (See Exhibit 18).

63.     In the months following the payment, Mr. Merolla realized that he had been unlawfully billed by Columbus Radiology and attempted to get a refund of his monies, including, but not limited to, contacting Columbus Radiology, filing complaints with the Ohio Attorney General's Office and the Centers for Medicare & Medicaid Services.

64. On or about August 19, 2024, a representative of Columbus Radiology advised plaintiff, Emil Merolla, via email, that he would receive a refund of the \$200.00 that Mr. Merolla had paid. (See Exhibit 19).

65. On December 18, 2024, Novitas Solutions, an entity acting on behalf of the Centers for Medicare & Medicaid Services sent a written correspondence to defendant, Columbus Radiology that stated "you collected \$200.00 more than was due from Emil Merolla" and went on to remind Columbus Radiology of potential civil penalties of \$2,000.00 per violation, administrative sanctions (including exclusion from the Medicare program) and criminal penalties that could result in imprisonment of not more than Six (6) months. (See Exhibit 20).

66. Despite the above promises and/or warnings, defendant, Columbus Radiology has failed, and continues to fail, to return Mr. Merolla's unlawfully held monies.

## Cynthia Merolla Allegations

67. On September 17, 2024, plaintiff, Cynthia Merolla, received medical treatment at Southwest General Hospital in Cuyahoga County, Ohio.

68. On September 17, 2024, plaintiff, Cynthia Merolla, encountered a registration clerk upon her arrival at Southwest General Hospital. Upon information and belief, the registration clerk was specifically trained to obtain health insurance information, demographic information and the reason for treatment regarding every new patient, including plaintiff, Cynthia Merolla.

69. On September 17, 2024, Plaintiff, Cynthia Merolla, informed the registration clerk at Southwest General Hospital that she had health insurance

coverage with Medicare and a Cigna Medicare Supplement, a health insurance corporation ("HIC"), and provided all relevant information necessary to submit claims for coverage to said HIC.

70. On or about September 17, 2024, Plaintiff, Cynthia Merolla, received radiology services from Columbus Radiology, its agents, servants and/or employees, including a mammogram interpretation.

71. An itemized Explanation of Benefits (EOB) for plaintiff, Cynthia Merolla's treatment at Southwest General Hospital, including, but not limited to, a mammogram interpretation, evidence that plaintiff, Cynthia Merolla, had insurance coverage with Medicare and Cigna, through a Medicare supplement policy. (See Exhibit 21).

72. Following treatment, defendant, Columbus Radiology, utilized the demographic information provided by plaintiff, Cynthia Merolla, to send medical bills seeking payment from plaintiff, Cynthia Merolla's HIC and from plaintiff, Cynthia Merolla directly, other than for co-payments or deductibles.

73. An October 15, 2024 EOB from plaintiff, Cynthia Merolla's HIC, Cigna Medicare Supplement indicates: Columbus Radiology sought payment from Ms. Merolla's HIC for patient account number CRC2767050, the HIC made payment to Columbus Radiology at the reimbursement rate and the remaining "PATIENT RESPONSIBILITY" was "$0.00." (See Exhibit 21).

74. On October 31, 2024, defendant, Columbus Radiology sent written correspondence to plaintiff, Cynthia Merolla, via U.S. Mail seeking payment for

health care expenses, other than a co-payment or deductible despite having been paid in full by Ms. Merolla's HIC. (See Exhibit 22).

75. At all times relevant herein, Ohio R.C. §1751.60 *et seq.*, Ohio R.C. §3902.51 and 26 U.S.C. Code §9816, required that medical providers seek compensation for covered services solely from the health insurance corporation and not, under any circumstances, from the enrollees or subscribers, except for approved co-payments and deductibles.

76. At all times relevant herein, defendants have intentionally and systematically refused, failed and/or avoided submitting claims to patients' health insuring corporations in an effort to increase profits and force patients, including plaintiffs, to pay more for medical services than would otherwise be paid by the patients' HIC.

77. Defendants collected and attempted to collect money directly from patients in an effort to increase profits in direct violation of Ohio law, Federal law and the Provider Agreements between Columbus Radiology and plaintiffs' health insurers.

78. Defendants are liable for the acts and omissions of their agents, servants and/or employees under the doctrine of *Respondeat Superior*.

## CLASS ALLEGATIONS

79. Plaintiffs, Lindsey Oaks, Gerald Jefferies, Constance Quigley, Emil Merolla and Cynthia Merolla, seek to bring this case as a Class Action, under Federal Rule of Civil Procedure 23, on behalf of themselves and all others similarly situated. The proposed Class is defined as follows:

All Ohio citizens who have received, or will receive, services from Columbus Radiology Corp. in a medical facility that contracts with the patients' health insuring corporation, who were, or will be, subjected to attempts to collect, or collection, by Columbus Radiology Corp. or Frost-Arnett Company of any amount other than co-pays or deductibles as required by the patients' health insurance contract.

## RULE 23 (A) REQUIREMENTS

80.    The members of the Class are so numerous that joinder of all members is impracticable and are expected to be in the thousands in that, among other things:

81.

a.    Columbus Radiology employs more than one hundred and thirty (130) radiologists;

b.    Columbus Radiology operates in seventy (70) Ohio ambulatory care centers;

c.    Columbus Radiology operates in twenty-four (24) Ohio hospitals; and,

d.    Consumer complaints submitted to the Ohio Attorney General's Office indicate that the preceding allegations contained within this Complaint are a common scheme and practice of defendants, Columbus Radiology and Frost-Arnett.  (See Exhibit 23).

82.     Questions of law and fact common to all class members predominate over any questions affecting only individual class members. Predominating common questions include, but are not limited to, the following:

> a.     Was a class member enrolled with an HIC accepted, or required to be accepted, by Columbus Radiology at the time of treatment?
>
> b.     Did defendants submit the claim to the class member's HIC?
>
> c.     Did defendants refuse to submit the claim to the class member's HIC?
>
> d.     Did defendants collect, or seek to collect, money from a health insured individual, other than a co-payment or deductible?
>
> e.     Did the defendants violate Ohio R.C. §1751.60?
>
> f.     Did the defendants violate Ohio R.C. §3902.51?
>
> g.     Did the defendants violate 26 U.S.C. Code §9816?
>
> h.     Did the defendants violate Ohio R.C. §1345.01?
>
> i.     Did the defendants violate 15 U.S.C. §1692?
>
> j.     Were the defendants unjustly enriched?
>
> k.     Did the defendants breach applicable provider agreements?

83.     The claims of the named plaintiffs, as the representative plaintiffs of the proposed class and potential sub-classes, are typical of the claims of the Class.

84.     Plaintiffs will fairly and adequately assert and protect the interests of the Class:

a.    Plaintiffs have retained Attorneys who are experienced in successfully prosecuting Class Action claims, including claims for violations of the relevant State and Federal statutes in the within Complaint.  The attorneys will adequately represent the interests of the Class; and,

b.    Plaintiffs have no conflict of interest that will interfere with the maintenance of this Class Action.

## RULE 23 (B) REQUIREMENTS

85.    The prosecution of separate actions by or against individual members of the Class would create risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

86.    Defendants have acted and/or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.  In order to protect Class Members from defendant's continuing violation of the Ohio and Federal statutes cited herein, injunctive and declaratory relief with respect to the Class as a whole is necessary, rendering class certification appropriate pursuant to Civil Rule 23(B)(2).

87.    A Class Action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Without a Class Action, individual class members would face burdensome litigation expenses, deterring them from bringing suit.

21

88.     The consideration of common questions of law and fact will conserve judicial resources and promote a fair and consistent resolution of these claims.

## COUNT ONE: TORTIOUS INTERFERENCE

89.     Plaintiffs refer to and incorporate the preceding allegations as if fully rewritten herein.

90.     At all times relevant herein, plaintiffs, Lindsey Oaks, Gerald Jefferies, Constance Quigley, Emil Merolla and/or Cynthia Merolla, (hereinafter "plaintiffs") and their HICs entered into a health insuring agreements.

91.     At all times relevant herein, defendants, Columbus Radiology and Frost-Arnett, without privilege to do so, purposely caused plaintiffs' HIC's not to perform their obligations to plaintiffs, by failing and/or refusing to submit medical expense claims to said HICs.

92.     As mandated by Ohio and Federal law, defendant, Columbus Radiology, its agents, servants and/or employees, including, but not limited to, defendant, Frost-Arnett, were required to submit bills for health care services to plaintiffs' HICs and not to plaintiffs, other than for co-pays and deductibles.

93.     As a direct and proximate result of defendants' acts and/or omissions, plaintiffs have incurred damages and are entitled to relief as further outlined herein.

94.     Defendants' acts and omissions, by and through its' agents, servants and/or employees, were willful, wanton, malicious and/or in bad faith. Defendants engaged in actual malice, fraud and insult entitling plaintiffs to punitive damages, legal fees and expenses.

22

## COUNT TWO: BREACH OF THIRD PARTY BENEFICIARY CONTRACT

95.    Plaintiffs refer to and incorporate the preceding allegations as if fully rewritten herein.

96.    Upon information and belief, defendant, Columbus Radiology, and plaintiffs' HICs entered into Provider Agreements for the benefit of health insureds, including, plaintiffs named herein; said insureds are third party beneficiaries of said Agreements.

97.    Upon information and belief, defendant, Columbus Radiology, submitted bills for health services directly to insureds, including, but not limited to, plaintiffs named herein.

98.    As a direct and proximate result of defendants' violation of the Provider Agreements and Ohio law, plaintiffs have incurred damages and are entitled to relief further outlined below.

## COUNT THREE: FAIR DEBT COLLECTION PRACTICES ACT

99.    Plaintiffs refer to and incorporate the preceding allegations as if fully rewritten herein.

100.    At all times relevant herein, plaintiffs, were "consumers" as defined by the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.*

101.    At all times relevant herein, defendant, Frost-Arnett, was and is a "debt collector" as defined by the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.*

102.    At all times relevant herein, defendant, Frost-Arnett, violated the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.,* by:

23

a.   Using false, deceptive, or misleading representations or means in connection with the collection of any debt;

b.   Using unfair or unconscionable means to collect or attempt to collect any debt;

c.   Making false representations as to the character, amount, or legal status of any debt;

d.   Making false representations that billing for any services may be lawfully received by any debt collector for the collection of a debt;

e.   Collecting or attempting to collect a debt not owed;

f.   Making threats to take any action that cannot legally be taken or that is not intended to be taken;

g.   Using false representations or deceptive means to collect or attempt to collect any debt;

h.   Collecting or attempting to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

103.   As a direct and proximate result of defendant, Frost-Arnett's, violation of the Fair Debt Collection Practices Act, plaintiffs have incurred damages and are entitled to relief as further outlined below.

## COUNT FOUR: COMMON LAW FRAUD

104.   Plaintiffs refer to and incorporate the preceding allegations as if fully rewritten herein.

105. At all times relevant herein, in pursuing money directly from patients, including, but not limited to, the named plaintiffs, in a manner barred by law, defendants, by and through their agents, servants and/or employees, made false representations of fact and said representations were made with knowledge of their falsity and with utter disregard and recklessness as to the falsity. (See Exhibits 4, 5, 6, 7, 8, 10, 12, 14, 16, 18, 19, 21, 22 and 23).

106. The representations made were material and involved money and debt collection, among other things.

107. The representations were made with the intent of misleading patients, including plaintiffs, thereby causing reliance upon said representations including, but not limited to, misrepresenting that monies where lawfully owed.

108. Patients, including the named plaintiffs, were justified in relying upon said representations, and did, in fact, so rely.

109. Patients, including, but not limited to, the named plaintiffs, were damaged and the damage was proximately or directly caused by the reliance on defendants' representations about the nature of the debt which was never owed.

110. Defendants are liable for the actions of their agents, servants and employees under the Doctrine of *Respondeat Superior.*

111. Defendants directly benefitted from the fraudulent conduct by collecting monies over and above what was legally owed.

112. As a direct and proximate result of defendants' acts and/or omissions, by and through their agents, servants and/or employees, plaintiffs incurred damages and are entitled to relief as further described herein.

## **COUNT FIVE: CONVERSION**

113.   Plaintiffs refer to and incorporate the preceding allegations as if fully rewritten herein.

114.   At all times relevant herein, in pursuing money directly from patients, including, but not limited to, the named plaintiffs, in a manner barred by law, defendants, by and through their agents, servants and/or employees, induced or attempted to induce patients to pay medical bills not owed.

115.   At all times relevant herein, by collecting money from patients, including plaintiffs, in a manner barred by law, defendants converted plaintiffs' property.

## **COUNT SIX: UNJUST ENRICHMENT**

116.   Plaintiffs refer to and incorporate the preceding allegations as if fully rewritten herein.

117.   Defendants, Columbus Radiology and Frost-Arnett were conferred a benefit by patients, including the named plaintiffs, who paid money for medical bills which were not owed.

118.   Defendants had knowledge of the benefit conferred upon them when defendants accepted money for medical bills which were not owed.

119.   Defendants' acceptance and/or retention of said benefits renders it inequitable for defendants to retain the benefits conferred by patients.

WHEREFORE, plaintiffs, Lindsey Oaks, Gerald Jefferies, Constance Quigley, Emil Merolla and Cynthia Merolla, on behalf of themselves and all others similarly situated, pray for judgment as follows:

A.     Certifying this action as a Class Action pursuant to Rule 23(b)(3) and 23(b)(2) of the Federal Rules of Civil Procedure and appointing the named Plaintiffs as proper Class Representatives;

B.     Awarding Plaintiff and members of the Class compensatory damages in excess of the minimal jurisdictional amount;

C.     Awarding Plaintiff and members of the class punitive damages in an amount to be determined by a jury;

D.     Granting Injunctive Relief requiring Defendants to cease and desist from violating the State and Federal statutes cited herein;

E.     Awarding the Class any and all damages allowed pursuant to 15 U.S.C. §1692 *et seq;*

F.     Attorney Fees and costs;

G.     Prejudgment and Post-judgment interest; and,

H.     Any and all further relief, both legal and equitable, that the Court may deem just and proper.

Respectfully submitted,

*/ s / Gary F. Franke*
Gary F. Franke     (#0029793)
Michael D. O'Neill     (#0075195)
William M. Bristol     (#0074005)
GARY F. FRANKE CO., L.P.A.
201 East Fifth Street, Suite 910
Cincinnati, OH 45202
Tel: (513) 564-9222
Fax: (513) 564-9990
mdo@garyfrankelaw.com

*/ s / C. David Ewing*
C. David Ewing     (#002898)
Ewing & Willis, PLLC

6009 Brownsboro Park Blvd., Ste. B
Louisville, KY 40207
Tel: (502) 585-5800
Fax: (502) 585-5858

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiffs hereby request a trial by jury as to all questions of fact.

*/ s / Gary F. Franke*
Gary F. Franke
Attorney at Law